UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:11-CV-00185

SOUTH CENTRAL BANK, INC., f/k/a                                                         Plaintiff
SOUTH CENTRAL BANK OF BARREN COUNTY, INC.

v.

KELLY KNIFELY, and                                                                     Defendants
VIRGINIA KNIFELY

**MEMORANDUM OPINION**

This matter is before the Court upon Plaintiff South Central Bank, Inc., f/k/a South Central Bank of Barren County, Inc.'s (South Central Bank) Motion for Summary Judgment. (Docket No. 13.) Defendants Kelly Knifely and Virginia Knifely (collectively, "the Knifelys") have responded, (Docket No. 14), and South Central Bank has replied, (Docket No. 15). This matter is now ripe for adjudication. For the reasons that follow, the Court will GRANT South Central Bank's Motion for Summary Judgment.

BACKGROUND

The essential facts of this matter are not disputed. This litigation arises out of a Guaranty Agreement executed by the Knifelys in which they guaranteed the payment of debts incurred by Beals Management, Inc. The Knifelys were involved in several business transactions with Timothy Beals, owner of Beals Management. Beals Management obtained a loan from South Central Bank on February 2, 2004, in the

original principal amount of $187,634.  (Docket No. 1-2.)  Beals, his wife, and the Knifelys each signed the Guaranty Agreement on February 4, 2004.  In that agreement, the Knifelys agreed to be jointly and severally guarantee the debt of Beals Management.  The Guaranty Agreement specified the termination date as January 1, 2015, and the maximum aggregate liability as $285,000.  (Docket No. 1-1.)  In addition to that maximum aggregate liability, the Knifelys further agreed to be liable for "interest accruing on the guaranteed indebtedness, and fees, charges and costs of collecting the guaranteed indebtedness, including reasonable attorneys' fees."  (Docket No. 1-1.)  Beals Management subsequently defaulted on the loan at issue, and South Central Bank now seeks to enforce the Guaranty Agreement against the Knifelys to collect on Beals Management's debt.

## STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact."  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989).  The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case.  *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996).  The plaintiff must present more than a mere scintilla of evidence in support of her position; she must present evidence on which the trier of fact could reasonably find for her.  *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).  Mere speculation will not suffice to defeat a motion for summary judgment: "[T]he mere

existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996), *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312 (6th Cir. 2012).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Still, "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

Finally, while the substantive law of Kentucky is applicable here pursuant to *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938), a federal court sitting in diversity applies the standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W2d 476 (Ky. 1991)." *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 165 (6th Cir. 1993), *abrogated on other grounds by Hertz Corp. v. Friend*, 130 S. Ct. 1181 (2010).

## DISCUSSION

The Knifelys raise two arguments why a genuine factual dispute exists that would preclude summary judgment in favor of South Central Bank. Both are without merit.

## I. Statute of Frauds

In their Answer[1] to South Central Bank's Complaint, the Knifelys posit that they were released from liability "by a duly authorized representative" of South Central Bank. (Docket No. 9, at 1-2.) In his deposition, Kelly Knifely clarifies that this refers to an oral statement he claims was made to him by South Central Bank loan officer Dennis Wilcutt. (Docket No. 13-2, at 18.) The Knifelys admit there is no written document signed by a representative of South Central Bank that either modifies the Guaranty Agreement or releases them from liability. (Docket Nos. 13-2, at 19; 13-4, at 3.) The Court will assume, for purposes of this Opinion, that Wilcutt did, in fact, make an oral representation to the Knifelys that South Central Bank released them from their obligations under the Guaranty Agreement. However, even assuming that allegation is true, any such oral modification would be unenforceable under the Kentucky Statute of Frauds.

The Kentucky Statute of Frauds requires that personal guaranties must be in writing and signed by the party to be charged to be enforceable:

> No action shall be brought to charge any person:
> . . . .
> (4) Upon any promise to answer for the debt, default, or misdoing of another;
> . . . .
> unless the promise, contract, agreement, representation, assurance, or ratification, or some memorandum or note thereof, be in writing and signed by the party to be charged therewith, or by his authorized agent. . . .

---

[1] Despite raising this argument in their Answer, the Knifelys do not directly discuss this argument in their Response to the instant motion for summary judgment.

Ky. Rev. Stat. § 371.010.  Where an agreement is subject to the Statute of Frauds, any modification that affects the material terms of that agreement must similarly comply with the Statute of Frauds' writing and signature requirements.  *E.g.*, *Farmers Bank & Trust Co. v. Willmott Hardwoods, Inc.*, 171 S.W.3d 4, 8 (Ky. 2005).

The Guaranty Agreement here is a promise to answer for the debt of another and, thus, subject to the Statute of Frauds.  Accordingly, any modification to its material terms must also comply with the Statute of Frauds.  The release of two of the four guarantors on a guaranty agreement certainly represents a modification of the material terms.  Therefore, the alleged oral promise here to release the Knifelys from their obligation under the Guaranty Agreement would be unenforceable under Kentucky law.

**II.     Requirements for a Valid, Enforceable Guaranty**

In their Response to the instant motion for summary judgment, the Knifelys argue that the Guaranty Agreement is invalid on its face and should not be enforced under the provisions of Kentucky's guaranty statute, Ky. Rev. Stat. § 371.065.  (Docket No. 14.)  This argument is also without merit.

Ky. Rev. Stat. § 371.065(1) provides, in relevant part:

> No guaranty of an indebtedness which either is not written on, or does not expressly refer to, the instrument or instruments being guaranteed shall be valid or enforceable unless it is in writing signed by the guarantor and contains provisions specifying the amount of the maximum aggregate liability of the guarantor thereunder, and the date on which the guaranty terminates. . . .

Or, as recently restated by the Sixth Circuit: "The statute provides three ways a guaranty can be enforceable: (1) if it is written on the instrument it guarantees; (2) if it expressly refers to the instrument it guarantees; (3) if it is in writing, signed by the guarantor, and specifies his aggregate liability [and the date on which the guaranty terminates]." *Alliant Tax Credit Fund 31-A, Ltd. v. Murphy*, 2012 WL 3519463, at *6 (6th Cir. Aug. 15, 2012). If any one of the three prongs is met, the statute is satisfied and the guaranty is valid and enforceable. *Wheeler & Clevenger Oil Co., Inc. v. Washburn*, 127 S.W.3d 609, 614-15 (Ky. 2004).

The Guaranty Agreement here satisfies the third prong and, therefore, is enforceable under Kentucky law. The Guaranty Agreement is in writing and is signed by the Knifelys. (Docket No. 1-1.) It specifies the termination date ("1-1-2015") and the maximum aggregate liability ("$285,000.00"). (Docket No. 1-1.) The principal indebtedness, $187,634, was incurred in 2004. (*See* Docket No. 1-2.) Therefore, that amount is less than the maximum aggregate liability of $285,000 and was incurred long before the termination date of January 1, 2015. (*See* Docket No. 1-1.) Accordingly, the Guaranty Agreement unquestionably satisfies the Kentucky guaranty statute.

The Knifelys attempt to argue that the purpose of the Kentucky guaranty statute—"to protect the guarantor by reducing the risk of a guarantor agreeing to guarantee an unknown obligation"—invalidates the Guaranty Agreement on its face because the form document used by South Central Bank did not afford the Knifelys the protections intended by the statute. (Docket No. 14, at 2-3 (quoting *Wheeler*, 127 S.W.3d at 615).) This argument is without merit for at least two reasons. First, for the

reasons discussed above, the Guaranty Agreement satisfies the Kentucky statute and is both valid and enforceable under Kentucky law. Second, as the Kentucky Court of Appeals recently explained, Ky. Rev. Stat. § 371.065 "does not seek to 'eliminate' unknown obligations; it only seeks to reduce the risk." *Smith v. Bethlehem Sand & Gravel Co.*, 342 S.W.3d 288, 292 (Ky. Ct. App. 2011). Here, Kelly Knifely has admitted he knew what obligation the Knifelys were guaranteeing. (*See* Docket No. 13-2, at 10-12.) Thus, the consumer protection purpose of the statute is satisfied in several ways, and the Court finds the Guaranty Agreement is valid and enforceable as a matter of law.

### III. Relief

The Kentucky guaranty statute further states:

> . . . [A] guaranty may, in addition to the maximum aggregate liability of the guarantor specified therein, guarantee payment of interest accruing on the guaranteed indebtedness, and fees, charges and costs of collecting the guaranteed indebtedness, including reasonable attorneys' fees, without specifying the amount of the interest, fees, charges, and costs.

Ky. Rev. Stat. § 371.065(2). Pursuant to this statute, and because the Guaranty Agreement is valid and enforceable, South Central Bank is entitled, under the Guaranty Agreement's express terms, to collect the full amount it seeks—$290,507.47—despite that that amount exceeds $285,000. And, under the agreement's terms, South Central Bank is also entitled to pre- and postjudgment interest, as well as its "fees, charges and costs of collecting the indebtedness, including reasonable attorneys' fees." (*See* Docket No. 1-1 (tracking the language of Ky. Rev. Stat. § 371.065(2).

CONCLUSION

For the foregoing reasons, the Court finds that there is no genuine issue as to any material fact and that South Central Bank is entitled to summary judgment as a matter of law. An appropriate Order and Judgment will issue separately with this Opinion.

Date:


cc:     Counsel